FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2021 FEB -3 PM 4: 51

CLERK
MIDDLE DISTRICT COURT
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

v.

DON V. CISTERNINO

CASE NO. 6:21-cr-16-ORL-78 DCI
18 U.S.C. § 1343
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1957

**INDICTMENT**

The Grand Jury charges:

**COUNTS ONE AND TWO**
**(Wire Fraud)**

### A.   Introduction

At times material to this Indictment:

<u>The Defendant and his Business Operations</u>

1. DON V. CISTERNINO was a resident of the Middle District of Florida.

2. MagnifiCo, Inc. ("MagnifiCo") was a State of New York corporation established in or about May 2014 by CISTERNINO. CISTERNINO listed himself as MagnifiCo's president and registered agent.

3. CISTERNINO advertised MagnifiCo as a consulting company. During 2019 and 2020, MagnifiCo had few or no employees other than

1

CISTERNINO and his girlfriend, L.Q. For 2019, MagnifiCo did not report any payroll or wages to federal agencies.

4. On or about April 12, 2020, CISTERNINO opened an account for MagnifiCo ending in 7809 ("Account -7809") at Radius Bank, an online bank headquartered in Boston, MA. At this time CISTERNINO listed a mailing address for himself in Bradenton, Florida, in the Middle District of Florida.

The Paycheck Protection Program

5. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

6. In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 emergency. Among its various provisions, the CARES Act authorized the

SBA to guarantee loans under the Paycheck Protection Program ("PPP"), and the full principal amount of the loans could qualify for forgiveness.

7. Borrowers were required to use PPP loan proceeds only for enumerated purposes, including payroll costs, rent and utilities, and mortgage interest payments. Knowing misuse of PPP funds would subject borrowers to additional liability, such as charges for fraud.

8. Under the PPP, the maximum loan amount was the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula considered the borrower's total payroll costs from the preceding twelve months for all domestic employees. Once an average monthly payroll cost was established, the borrower would multiply that figure by 2.5 to arrive at a total maximum PPP loan amount. This payroll-based formula expressly excluded the compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary, and, with limited exceptions, businesses with more than 500 employees did not qualify to obtain PPP loans.

9. To apply for a PPP loan, a potential borrower electronically submitted an SBA Form 2483 with supporting payroll documentation to a financial institution that would administer the loan and serve as custodian of the funds. On the SBA Form 2483, an authorized representative of the

business was required to certify information regarding business operations. Those certifications included that: (i) the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

10. Further, when submitting the SBA Form 2483, the authorized representative certified his understanding that, should the PPP funds be knowingly used for unauthorized purposes, the United States could hold him legally liable, including for charges of fraud. The applicant was also required to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents, including any documents submitted to verify the applicant's payroll expenses. Such supporting documents could include payroll processor records, bank records, wage records, payroll tax filings with the Internal Revenue Service, or other records sufficient to demonstrate the qualifying payroll amount.

11. Finally, the applicant was required to certify the following warning regarding false statements and other criminal penalties:

> I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five

years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

12. PPP loan applications would then be processed by participating lenders. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

PPP Lender F.H. and Brokers R.A. and Q.C.C.

13. F.H., a financial institution located in the Middle District of Florida, participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of PPP.

14. R.A. and Q.C.C. were New York companies that provided loan brokerage services to help client businesses obtain financing. R.A. and Q.C.C. (hereinafter, the "Brokers") helped clients apply for SBA-guaranteed PPP loans, including through F.H. (hereinafter, the "Lender").

### B. The Scheme and Artifice

15. Beginning in or about April 2020, and continuing through in or about December 2020, in the Middle District of Florida, the Southern District of New York, and elsewhere, the defendant,

DON V. CISTERNINO,

did knowingly, and with intent to defraud, devise and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, the substance of which scheme and artifice is described below.

### C. Manner and Means of the Scheme and Artifice

16. The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

    a. It was part of the scheme and artifice to defraud that the defendant would and did submit and cause the submission of a false and fraudulent PPP loan application to the Lender (through the Brokers) on behalf of MagnifiCo seeking a PPP loan from the SBA.

    b. It was further part of the scheme and artifice to defraud that the defendant would and did falsely and fraudulently certify that the PPP funds acquired from the requested loan would be used to retain workers,

maintain payroll, or make mortgage interest payments, lease payments, and utility payments.

  c. It was further part of the scheme and artifice to defraud that the defendant would and did falsely and fraudulently certify that MagnifiCo had 441 employees with an average monthly payroll of $2,880,000.

  d. It was further part of the scheme and artifice to defraud that the defendant would and did submit and cause to be submitted false and fraudulent supporting documentation to the Lender (through the Brokers), including, among others, false MagnifiCo bank statements, false MagnifiCo quarterly Federal tax returns, a false MagnifiCo U.S. Corporation Income Tax Return, and false 2019 Form W-2s for MagnifiCo's purported employees, many of which listed the name and social security numbers of persons who were not in fact MagnifiCo employees in 2019.

  e. It was further part of the scheme and artifice to defraud that the defendant's materially false, fraudulent, and misleading representations and documentation would and did cause the SBA to approve the PPP application and the SBA to issue approximately $7,210,000 in PPP funds to the Lender, which the Lender then deposited into Account -7809 under the defendant's control.

f.  It was further part of the scheme and artifice to defraud that the defendant would and did use and cause the PPP funds to be used for unauthorized purposes and for his own personal enrichment, including the purchase of Lincoln Navigator, Maserati, and Mercedes-Benz vehicles, and an approximately 12,579 sq. ft. residence in Seminole County, FL.

g.  It was further part of the scheme and artifice to defraud that the defendant would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of acts performed in furtherance of the scheme to defraud.

### D. Executions of the Scheme and Artifice

17.  On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

DON V. CISTERNINO,

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds:

| Count | On or About Date | Interstate Wire |
|---|---|---|
| ONE | May 5, 2020 | Email from Don Cisternino in the Middle District of Florida to Q.C.C. in the Eastern District of New York with the subject line "Re: Page Two" attaching "MAGNIFICO INC PPP Application Form" |
| TWO | May 28, 2020 | Wire transfer in the amount of $7,210,000 from F.H.'s Capital One N.A. account ending in 5588 into MagnifiCo's Radius Bank account ending in 7809, processed using a server located outside of Florida |

All in violation of 18 U.S.C. § 1343.

## COUNTS THREE THROUGH FIVE
### (Aggravated Identity Theft)

1.  The paragraphs of Parts A and C of Counts One and Two of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.  On or about May 17, 2020, in the Middle District of Florida, and elsewhere, the defendant,

DON V. CISTERNINO,

did knowingly transfer, possess and use without lawful authority, a means of identification of another person, as indicated below, during and in relation to a felony violation of wire fraud, in violation of 18 U.S.C. § 1343, as charged in Counts One and Two of this Indictment, knowing that such means of identification belonged to an actual person:

9

| Count | Description |
|---|---|
| THREE | Victim J.S.'s name and Social Security Number in support of PPP loan application |
| FOUR | Victim J.D.'s name and Social Security Number in support of PPP loan application |
| FIVE | Victim C.J.'s name and Social Security Number in support of PPP loan application |

In violation of 18 U.S.C. §§ 1028A and 2.

## COUNTS SIX THROUGH EIGHT
### (Illegal Monetary Transaction)

1. The paragraphs of Parts A and C of Counts One and Two of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2. On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

DON V. CISTERNINO,

did knowingly engage and attempt to engage in the described monetary transaction, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343:

| Count | On or About Date | Approx. Amount | Transaction |
|---|---|---|---|
| SIX | May 30, 2020 | $89,413.71 | A draft from MagnifiCo's Radius Bank account ending in 7809 to a dealership in the Middle District of Florida to purchase a Lincoln Navigator vehicle |
| SEVEN | June 22, 2020 | $251,436.21 | A draft from MagnifiCo's Radius Bank account ending in 7809 to a dealership in the Middle District of Florida to purchase a Mercedes-Benz vehicle |
| EIGHT | July 6, 2020 | $3,104,000.00 | A wire transfer from MagnifiCo's Radius Bank account ending in 7809 to a title company in the Middle District of Florida to purchase a residence in Seminole County, FL |

In violation of 18 U.S.C. §§ 1957 and 2.

## FORFEITURE

1. The allegations contained in Counts One, Two, and Six through Eight are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. Upon conviction of a violation of 18 U.S.C. § 1957, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1),

any property, real or personal, involved in such offense, or any property traceable to such property.

 4. The property to be forfeited includes, but is not limited to, the following:

  a. an order of forfeiture in the amount of $7,210,000, which represents the proceeds obtained from the offenses;

  b. approximately $446,580.86 seized from Wells Fargo Bank account number 1040205207573, held in the name of Victor A. Cisternino and/or Mary Jo Cisternino;

  c. approximately $439,576.96 seized from TD Bank account number 7919290655, held in the name of Victor A Cisternino and/or Mary J Cisternino;

  d. approximately $94,726.07 seized from JP Morgan Chase Bank account number 650710970, held in the name of Victor A. Cisternino or Mary J. Cisternino;

  e. approximately $5,000.21 seized from JP Morgan Chase Bank account number 3838760727, held in the name of Victor A. Cisternino or Mary J. Cisternino;

  f.  approximately $86,039.88 seized from Citibank account number 6866323510, held in the name of Denise L Pieck, ITF Keith Pieck; and

  g.  the real property, including all improvements thereon and appurtenances thereto, located at 3018 Kingfisher Pt., Chuluota, FL, titled in the name of Don Cisternino and Lori Quasky.

5. If any of the property described above, as a result of any act or omission of the defendant:

  a.  cannot be located upon the exercise of due diligence;

  b.  has been transferred or sold to, or deposited with, a third party;

  c.  has been placed beyond the jurisdiction of the Court;

  d.  has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C § 853(p), as incorporated by 18 U.S.C § 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By: _____
Chauncey A. Bratt
Assistant United States Attorney

By: _____
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

# UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

THE UNITED STATES OF AMERICA

vs.

DON V. CISTERNINO

## INDICTMENT

Violations: 18 U.S.C. § 1343
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1957

A true bill,

_____
Foreperson

Filed in open court this 3rd day of February, 2021

_____
Clerk

Bail  $_____

GPO 863 525