UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:21-cr-16-WWB-DCI

DON V. CISTERNINO

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by
Roger B. Handberg, United States Attorney for the Middle District of Florida,
and the defendant, DON V. CISTERNINO, and the attorney for the
defendant, Michael Ryan, Esq., mutually agree as follows:

### A.    Particularized Terms

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts Two, Three,
and Eight of the Indictment. Count Two charges the defendant with wire
fraud, in violation of 18 U.S.C. § 1343. Count Three charges the defendant
with aggravated identity theft, in violation of 18 U.S.C. § 1028A. Count Eight
charges the defendant with illegal monetary transaction, in violation of 18
U.S.C. § 1957.

2.    Maximum Penalties

Count Two carries a maximum sentence of 20 years'
imprisonment, a fine of up to $250,000, or twice the gross gain caused by the

Defendant's Initials  *D C*

offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than three years, and a special assessment of $100. Count Three carries a mandatory sentence of two years' imprisonment to be served consecutively to any term of imprisonment for any other count, a maximum fine of $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than one year, and a special assessment of $100. Count Eight carries a maximum sentence of 10 years' imprisonment, a fine of up to $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, or twice the amount of the criminally derived property involved in the transaction, a term of supervised release of not more than three years, and a special assessment of $100.

    3.    <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count Two are:

| <u>First</u>: | the defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises; |
|---|---|
| <u>Second</u>: | the false pretenses, representations, or promises were about a material fact; |

Defendant's Initials  D C

2

| Third: | the defendant acted with the intent to defraud; and |
|---|---|

| Fourth: | the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud. |
|---|---|

The elements of Count Three are:

| First: | the defendant knowingly transferred, possessed, or used another person's means of identification; |
|---|---|
| Second: | the defendant did so without lawful authority; and |
| Third: | the defendant did so during and in relation to the crime of wire fraud in violation of 18 U.S.C. § 1343. |

The elements of Count Eight are:

| First: | the defendant knowingly engaged, or attempted to engage, in a monetary transaction; |
|---|---|
| Second: | the defendant knew the transaction involved property or funds that were the proceeds of some criminal activity; |
| Third: | the property or funds had a value of more than $10,000; |
| Fourth: | the property or funds were in fact proceeds of the wire fraud described in the indictment; and |
| Fifth: | the transaction took place in the United States. |

4.    Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Count One and Counts Four through Seven of the Indictment, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

Defendant's Initials DC

3

5. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge the defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the charges giving rise to this plea agreement.

6. <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A and 18 U.S.C. § 3663(a) and (b), defendant agrees to make full restitution to the U.S. Small Business Administration in the amount of $7,210,000.

7. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

Defendant's Initials _D C_    4

8. <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to move pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _D C_

9. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: the $7,210,000 in proceeds the defendant admits he obtained, as the result of the commission of the wire fraud scheme to which the defendant is pleading guilty, as well as the funds from the following bank accounts:

    a.    approximately $446,580.86 seized from Wells Fargo Bank account #1040205207573, held in the name of Victor A. Cisternino and/or Mary Jo Cisternino;

    b.    approximately $439,576.96 seized from TD Bank account #7919290655, held in the name of Victor A Cisternino and/or Mary J Cisternino;

    c.    approximately $94,726.07 seized from JP Morgan Chase Bank account #650710970, held in the name of Victor A. Cisternino and/or Mary J. Cisternino;

    d.    approximately $5,000.21 seized from JP Morgan Chase Bank account #3838760727, held in the name of Victor A. Cisternino and/or Mary J. Cisternino;

    d.    approximately $86,039.88 seized from Citibank account #6866323510, held in the name of Denise L Pieck and/or ITF Keith Pieck;

and the real property located at 3018 Kingfisher Pt., Chuluota, FL, titled in the name of Don Cisternino and Lori Quasky.[1] The defendant admits that the real property was purchased with proceeds he obtained from his wire fraud scheme and was involved in the money laundering transaction charged in Count Eight of the Indictment. The defendant further admits that the funds in the bank accounts are proceeds of his wire fraud scheme that he transferred to his family members. The net proceeds from the forfeiture and sale of any specific assets will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that (1) the defendant obtained $7,210,000 as a result of the commission of the wire fraud scheme and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is

---

[1] The real property was forfeited in *United States v. Real Property Located at 3018 Kingfisher Point., Chuluota, FL 32766*, Case No. 2306-Orl-PGB-EJK at Doc. 23. The defendant admits that he received proper notice of the forfeiture of the real property, but chose not to file a claim to contest the forfeiture of the property.

7

Defendant's Initials D C

entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative

Defendant's Initials  DC

forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all

Defendant's Initials  DC

assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for

Defendant's Initials _D C_

acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

10.    Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offenses to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including

Defendant's Initials  DC

11

the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

**B.   Standard Terms and Conditions**

   1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not

Defendant's Initials _D C_

limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.     <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.     <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.     <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises

14

Defendant's Initials  D C

that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement,

Defendant's Initials  DC

15

or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground

Defendant's Initials DC                16

that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials _DC_

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant

Defendant's Initials  D C              18

pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials D C

13. **Certification**

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this 12 day of September, 2022.

ROGER B. HANDBERG
United States Attorney

Don V. Cisternino
Defendant

Chauncey A. Bratt
Assistant United States Attorney

Michael Ryan, Esq.
Attorney for Defendant

Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials DC

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                     CASE NO. 6:21-cr-16-WWB-DCI

DON V. CISTERNINO

## PERSONALIZATION OF ELEMENTS

**Count Two**

First:      Did you knowingly devise or participate in a scheme to
            defraud the U.S. Government by using false or fraudulent
            pretenses, representations, or promises?

Second:     Were the false pretenses, representations, or promises
            about a material fact?

Third:      Did you act with the intent to defraud?

Fourth:     Did you cause to be transmitted by wire a communication
            in interstate commerce to help carry out the scheme to
            defraud, namely a wire transfer in the amount of
            $7,210,000 from the Lender's Capital One N.A. account
            into MagnifiCo's Radius Bank account?

**Count Three**

First:      Did you knowingly transfer, possess, or use another
            person's means of identification, specifically the name and
            Social Security Number of J.S.?

Second:     Did you do this without lawful authority?

Third:      Did you do this during and in relation to the crime of wire
            fraud in violation of 18 U.S.C. § 1343?

Defendant's Initials _D C_                     21

## Count Eight

First: Did you knowingly engage, or attempt to engage, in a monetary transaction, namely the purchase of a residence in Seminole County, FL?

Second: Did you know that the transaction involved property or funds that were the proceeds of some criminal activity?

Third: Did the property or funds have a value of more than $10,000?

Fourth: Were the property or funds proceeds of the wire fraud described in the indictment?

Fifth: Did this transaction take place in the United States?

22

Defendant's Initials D C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                CASE NO. 6:21-cr-16-WWB-DCI

DON V. CISTERNINO

## **FACTUAL BASIS**

Don Cisternino ("Cisternino") fraudulently obtained a $7.2 million Paycheck Protection Program ("PPP") loan by falsely claiming that his New York company, MagnifiCo Inc. ("MagnifiCo"), had 441 employees and an average monthly payroll of $2.9 million. In fact, MagnifiCo had few, if any, employees other than Cisternino. In support of his PPP loan application, Cisternino submitted falsified bank statements, fake tax returns, and 441 fake Form W-2s for his purported employees. For many of the purported employees, he used the stolen names and Social Security numbers of identity theft victims. Cisternino used the fraudulently-obtained PPP loan proceeds to purchase a 12,579 sq. ft. residence in Chuluota, FL for $3,499,000, as well as to make other luxury purchases including Maserati, Lincoln Navigator, and Mercedes vehicles.

Defendant's Initials *D C*                                23

## *Background Regarding the CARES Act and PPP*

In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 pandemic. Among its various provisions, the CARES Act authorized the SBA to guarantee loans through the Paycheck Protection Program (PPP), under which the full principal amount of the loans could qualify for forgiveness.

The PPP allowed qualifying small-businesses and other organizations to receive loans with a maturity of two years and an interest rate of one percent. Most businesses were ineligible to receive PPP loans unless they had fewer than 500 employees. PPP loan proceeds had to be used by businesses on qualifying expenses including payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the loan to be forgiven if businesses spent the proceeds on these qualifying expenses within eight weeks of receipt and used at least 75 percent of the forgiven amount for payroll.

Under the PPP, the maximum loan amount a business could obtain was the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula principally considered the borrower's aggregate payroll costs from the preceding twelve

Defendant's Initials  D C

months for all domestic employees. Once an average monthly payroll cost was established, the borrower multiplied that amount by 2.5 to arrive at the total maximum PPP loan amount. This payroll-based formula expressly excluded the compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary.

### *The PPP Application Process: the SBA Form 2483*

To apply for a PPP loan, potential borrowers electronically submitted an SBA Form 2483 with supporting payroll documentation to a financial institution that administered the loan and served as custodian of the funds. On the SBA Form 2483, an authorized representative of the borrower had to make several certifications about his business operations and related information. Those certifications included, among others, that: (i) the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes, or paid independent contractors as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

Further, when submitting the SBA Form 2483, the authorized representative had to certify that, should he knowingly use the PPP funds for

Defendant's Initials  DC

unauthorized purposes, the United States could hold him legally liable, including for charges of fraud. The applicant also had to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents. Such supporting documents could include payroll tax filings with the Internal Revenue Service ("IRS"), such as the Employer's Quarterly Federal Tax Return and the "IRS Form 941."

Finally, the applicant had to certify that he understood that should he knowingly make false statements on the forms, he was subject to criminal penalties.

### *Background regarding MagnifiCo*

MagnifiCo was incorporated in the state of New York on May 12, 2014. Cisternino was the founder and registered agent of MagnifiCo. MagnifiCo's LinkedIn page provides the company overview as: "Software, Consulting, Marketing, IT, Tech, Apps, Graphics, Websites, Content, PR, Social, Talent, Literary, Professional and Personal Services, and more" and listed its web address as http://magnifico.media. However, at the time that Cisternino applied for a PPP loan in 2020, that webpage was not functional and did not contain any information regarding MagnifiCo.

Defendant's Initials D C

## _Cisternino's Submission of Fraudulent PPP Loan Application for MagnifiCo_

The CARES Act was signed into law on March 27, 2020. On or about April 8, 2020, Cisternino participated in an informational video call during he learned of the documents he would need to submit to obtain a PPP loan for his company, including, among other things, his company's most recent two months of bank statements and copies of his passport. On April 12, 2020, Cisternino opened an account number ending in 7809 at Radius Bank in the name of MagnifiCo.[2] On May 4, 2020, Cisternino emailed contacts who had been on the video call, stating that "If there is still funding available, I would like to apply," and attaching requested documents. That same day, one of those contacts referred Cisternino to L.R., a loan broker in New York, whose job was to help clients obtain loans from various lenders. One of those was a mortgage lender located in Lake Mary, Florida in the Middle District of Florida (the "Lender").

L.R. helped Cisternino obtain a PPP loan through the Lender. Between May 5, 2020, and May 11, 2020, to apply for the loan, Cisternino sent, or caused to be sent, to L.R. a number of false or fraudulent documents which L.R. forwarded on to the Lender, including the following:

---

[2] Cisternino was the sole signatory for this account.

Defendant's Initials D C

27

- A Paycheck Protection Program Borrower Application Form (SBA Form 2483) dated May 5, 2020, on which Cisternino falsely certified that MagnifiCo had 441 employees and an average monthly payroll of $2,880,000. On this form Cisternino confirmed that he was the Founder, CEO, and 100% owner of MagnifiCo. Cisternino certified in this application, among other things, that he would use the funds "to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." He acknowledged that if the funds were knowingly used for unauthorized purposes "the federal government may hold me legally liable, such as for charges of fraud."

- Wells Fargo Bank Statements for January and February 2020 for a MagnifiCo business bank account ending in 7533. These statements falsely purported to show that MagnifiCo made "Payroll" withdrawals of $720,000 every week. In fact, this document had been forged and falsified by Cisternino. Wells Fargo has confirmed that this account number does not exist, and there are inconsistencies in one of the statements that also show that the bank statements were fraudulent.

- Form 941 Employer's Quarterly Federal Tax Returns for MagnifiCo signed by Cisternino for each of the four 2019 tax quarters. Each of these four quarterly tax returns stated that MagnifiCo paid exactly $9,360,000 in wages (e.g. $720,000 x 13 weeks) for the quarter in question, and had withheld exactly $561,602.25 of those wages as the employees' wage withholdings for that quarter. In fact, these documents were fake, and MagnifiCo had not filed any Form 941s for 2019.

- Form 1120 U.S. Corporation Income Tax Return for MagnifiCo for 2019 signed by Cisternino. According to this purported return, MagnifiCo paid $37,440,000 in wages during 2019 (i.e. 9,360,000 x 4) and earned $44.9 million in gross receipts and sales. In fact, this document was fake, and MagnifiCo did not file any Form 1120 for 2019.

On May 11, 2020, Cisternino also provided a direct deposit form

requesting that the deposit of the loan proceeds be made into the Radius bank

Defendant's Initials  D C

28

account ending in 7809 that he had opened the month prior after learning about the PPP loan requirements.

Later, on May 11, 2020, after receiving the above documents, the loan underwriter for the Lender sent the following message to L.R.: "I need to verify that no one made more than $100k in 2019 so I need W-2 forms for each employee or a detailed payroll summary that shows all the employees' salaries. That's what I need to submit this one." That same day, L.R. sent Cisternino the following message: "[The Lender] will need to verify that no one made more than $100k in 2019 so the last item they are asking for at this time is either the W-2 forms for each employee or a detailed payroll summary that shows all the employees' salaries."

After nearly a weeklong delay, on the evening of May 17, 2020, Cisternino had his girlfriend send an email to L.R. attaching a file prepared by Cisternino containing 441 falsified W-2s for purported MagnifiCo employees. L.R. forwarded this email and the 441 W-2s to the Lender's underwriter. On May 18, 2020, after receiving the W-2s, the Lender's underwriter emailed L.R. asking, "I reviewed the 2019 941 forms and W-2 and noticed that all four 941 forms have the exact same amount. Also, about 86 employees made $90,000 and over 200 employees made $85,000. Were these amounts rounded or are these the exact amounts/salaries employees received in 2019? I'm specifically

Defendant's Initials DC

asking these questions since the SBA will audit this file due to the size of this deal." L.R. conveyed this question to Cisternino and his girlfriend. Cisternino responded the next day with a lengthy email attempting to justify the salary amounts. In this email, he stated "The short answer to these questions is that 1) we didn't have any changes in terms of personnel last year, so the 941's show the same amount for each quarter, and 2) Those are the correct employee salaries on the W-2's. Nothing has been rounded." L.R. conveyed Cisternino's response to the underwriter on May 19, 2020, and later that day, the underwriter responded "Thanks. The deal was approved by the SBA. Approval # is 83216674-04."

On May 27, 2020, Cisternino and the Lender signed the closing paperwork for the loan, on which Cisternino certified that the loan amount of $7,210,000 would be used for the "Paycheck Protection Program," and on which he again acknowledged that he would be subject to criminal charges if he had submitted false information to the Government.

Emails sent by Cisternino show that he was living (and working from home) in Bradenton, FL, in the Middle District of Florida, at the time that he applied for the PPP loan.

Defendant's Initials  DC

### *Disbursement and Use of Funds*

On May 28, 2020, the loan proceeds in the amount of $7,210,000 were wired from the Lender's account at Capital One N.A. ending in 5588, into MagnifiCo's Radius Bank account ending in 7809, for which Cisternino was the sole authorized signatory. Prior to this deposit, the account balance of MagnifiCo's Radius bank account was $89.44.

At the time of the deposit, Radius Bank sent a "Wire Transfer of Funds Notice" for the $7.2 million transfer to Cisternino's residence in Bradenton, FL. An analysis of the records for the Radius Bank account ending in 7809 shows that Cisternino did not use the $7.2 million in PPP loan proceeds to make payroll payments to the individuals listed on the Form W-2s supplied by Cisternino. Nor were any of these funds sent to any payroll companies or used for rent or utilities. Instead, most of the funds were used by Cisternino on luxury items or to make payments to his girlfriend or family members, including the following:

- Check dated May 30, 2020, signed by Cisternino, for $89,413.71 to a Lincoln dealership in the Middle District of Florida with "Don Cisternino Lincoln Navigator" in the memo line;

- Debit card purchase dated June 1, 2020 for $361.74 at Capital Grille in Sarasota, FL;

Defendant's Initials _DC_

- Check dated June 9, 2020, signed by Cisternino, for $1,440,000.00 Cisternino's father;[3]

- Check dated June 22, 2020, signed by Cisternino, for $251,436.21 to a Mercedes-Benz dealership in the Middle District of Florida;[4]

- Check dated June 25, 2020, signed by Cisternino, for $48,477.26 to an auto finance company with "Maserati Payoff: Acct # 0011070037" in the memo line;

- Check dated June 28, 2020, signed by Cisternino, for $7,122.31 to his girlfriend;

- Wire transfer dated June 29, 2020 for $200,000 to a title company. The wire notes state that this was a deposit for "3018 Kingfisher Pt., Chuluota, FL 32766";

- Check dated June 30, 2020, signed by Cisternino, for $7,473.38 made payable to an auto company and with "Payoff for Nissan for [Cisternino's girlfriend]" in the memo line; and

---

[3] Those funds were initially deposited into Wells Fargo Bank account #1040205207573, held in the name of Victor A. Cisternino and/or Mary Jo Cisternino. Thereafter, in July 2020, $550,000 of those funds were transferred to TD Bank Account #7919290655 held in the name of Victor A Cisternino and/or Mary J Cisternino. In August 2020, $100,000 of the $1,440,000 was "split-deposited" into JP Morgan Chase Bank Account #650710970 held in the name of Victor A. Cisternino and/or Mary J. Cisternino ($95,000) and JP Morgan Chase Bank Account #3838760727 held in the name of Victor A. Cisternino and/or Mary J. Cisternino ($5,000). The defendant's parents ultimately transferred $86,039.88 in fraud proceeds from TD Bank Account #7919290655 to the defendant's sister's account - Citibank Account Number 6866323510 held in the name of Denise L Pieck ITF Keith Pieck. The fraud proceeds remaining in these accounts were ultimately seized by the IRS.

[4] Cisternino subsequently had a Mercedes Benz S650X (which has a base MSRP of $202,550) registered in his name with the State of Florida.

Defendant's Initials  PC

- Wire transfer dated July 6, 2020 for $3.1 million described as "Balance of Purchase Price for 3018 Kingfisher Pt. Chuluota, FL 32766 from Don Cisternino, CEO Magnifico Inc."

On July 7, 2020, Cisternino completed the purchase of 3018 Kingfisher Pt., Chuluota, FL for a total price of $3,499,000, and no mortgage was filed against the property. The entire purchase price was funded using proceeds from Cisternino's fraudulently-obtained PPP loan. The Kingfisher Pt. property sits on twelve plus acres, and is approximately 12,579 square feet in size, with 7 bedrooms, 11 bathrooms, a 4-car garage, a theater room, a "resort style" pool and spa area, tennis courts, and a 5-stall horse barn:



Defendant's Initials D C





Defendant's Initials _DC_



*W-2 Analysis and Interviews of Purported Employees*

An analysis of the 441 Form W-2s submitted by Cisternino in support of his loan application showed the following:

- 132 of the Form W-2s listed Social Security numbers that were never issued to any individual;

- 150 of the Form W-2s listed Social Security numbers that belong to an individual other than the person listed on the Form W-2; and

- 158 of the Form W-2s listed Social Security numbers that were issued to the same individual listed on the Form W-2; however, three of those individuals were deceased prior to the end of 2019 (two died in 2018 and the third died on March 7, 2019).

IRS special agents interviewed several of the 158 individuals whose actual names and Social Security numbers were used together on the W-2s, including J.S., M.B., C.J., J.D., J.M., and B.O. Each of them confirmed that they had not ever worked for MagnifiCo and that they had not received the

Defendant's Initials PC

35

salary listed for them in the W-2s. Although some of them knew Cisternino, none of them had authorized Cisternino to use their names and social security numbers to apply for the PPP loan.

### *Flight of Cisternino*

Between late December 2020 and mid-January 2021, the United States filed a civil forfeiture action against the Kingfisher Point residence, *see* footnote 1, and the IRS obtained seizure warrants for the funds in the following accounts:

> a. $446,580.86 in Wells Fargo Bank account number 1040205207573, held in the names of Victor A. Cisternino and/or Mary Jo Cisternino;
>
> b. $439,576.96 in TD Bank account number 7919290655, held in the names of Victor A Cisternino and/or Mary J Cisternino;
>
> c. $94,726.07 in JP Morgan Chase Bank account number 650710970, held in the names of Victor A. Cisternino and/or Mary J. Cisternino;
>
> d. $5,000.21 in JP Morgan Chase Bank account number 3838760727, held in the names of Victor A. Cisternino and/or Mary J. Cisternino; and
>
> e. $86,039.88 in Citibank account number 6866323510, held in the name of Denise L Pieck ITF Keith Pieck,

because the real property was purchased with, and the accounts were funded with, proceeds from Cisternino's PPP loan fraud.

On December 29, 2020, law enforcement agents visited the Kingfisher Pt. residence and found Cisternino and his girlfriend living at the residence. The law enforcement agents informed Cisternino that a federal court had

Defendant's Initials  DC

authorized them to conduct a check on the condition of the residence and to inventory its contents. They informed Cisternino of the pending investigation against him and told him that he was authorized to continue living at the residence until further notice, but was responsible to maintain the residence in its current condition. The IRS served a subpoena on Cisternino requiring him to provide copies of specified MagnifiCo business records by January 29, 2021.

On January 22, 2021, Cisternino fled to Switzerland without producing any of the requested documents. He was arrested on April 11, 2021, pursuant to an Interpol Red Notice, as he attempted to enter Croatia from Slovenia by way of Italy. ~~Cisternino then contested his extradition to the United States, but was ultimately ordered to be extradited, arriving in the United States on April 28, 2022~~.

### *Interstate Nexus*

The Lender sent the PPP loan proceeds to Cisternino from its Capital One N.A. bank account. The servers that Capital One N.A. utilized to send wire payments were located in Virginia and Oregon. Cisternino received the funds at his Radius Bank account. Radius Bank utilized servers in Jacksonville, Florida to receive wire transfers. The wire thus, by necessity, involved communications across state lines.

Defendant's Initials _D C_